61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MICHIGAN SUPERVISORS' OFFICE & PROFESSIONAL EMPLOYEES
INTERNATIONAL UNION, William T. Gannon, on behalf of himself
and all other similarly situated supervisory security
personnel employed by Defendant; Travis U. Jones, on behalf
of himself and all other similarly situated civilian
employees of Defendant, Plaintiffs-Appellants, Cross-Appellees,
v.
MICHIGAN DEPARTMENT OF CORRECTIONS; Michigan Department of
Civil Service, Defendants-Appellees, Cross-Appellants.
 Nos. 94-1203, 94-1264.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1995.
 
 BEFORE: CONTIE, MILBURN, and SILER, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiffs, Michigan Supervisors' Office & Professional Employees International Union, William T. Gannon, and Travis Jones, appeal and defendants, the Michigan Department of Corrections ("MDOC") and the Michigan Department of Civil Service ("MDCS"), cross-appeal the district court's orders and judgments in this class action seeking recovery of unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Secs. 201-219.
 
 
 2
 In plaintiffs'appeal, the issues are (1) whether the district court erred in granting summary judgment for defendants on plaintiffs' claims for overtime in Count I and II of their second amended complaint, (2) whether the district court erred in ordering that no additional plaintiffs could "opt in" to this action after July 23, 1993, (3) whether the district court erred in denying plaintiffs' request for liquidated damages, costs, and attorney's fees, (4) whether the district court erred in dismissing plaintiffs' pendent state law claim for breach of Michigan's compensation plan in Count III of their second amended complaint, (5) whether the district court erred in dismissing plaintiffs' claims concerning their rights under various grievance awards for failure to exhaust administrative remedies, and (6) whether the district court erred in determining that sergeants and lieutenants are not entitled to reimbursement for budget-related furlough days because they are not paid on a salary basis and are entitled to overtime.
 
 
 3
 In defendants' cross-appeal the issues presented are (1) whether the district court's application of the FLSA to plaintiffs violates the Tenth Amendment to the Constitution, and (2) whether the district court erred when it found that the FLSA required defendants to reimburse salaried employees for deductions in wages made as the result of four budget-related furlough days in August of 1991. For the reasons that follow, we affirm in part and reverse in part.
 
 I.
 A.
 
 4
 Plaintiffs are employees of the MDOC. However, they are divided into two classes for purposes of this litigation: the supervisor class consists of the supervisors of the security personnel in MDOC correctional institutions; the civilian class consists of civilian employees of MDOC. Plaintiffs have been divided into two classes because under the FLSA, they would be eligible to receive overtime compensation, if they do not fall within an exception, at different rates: civilians are eligible to receive overtime pay at a rate equal to one-and-one half times their regular hourly rate in excess of forty hours per week, whereas supervisors are eligible to receive overtime pay for hours worked in excess of eighty-six hours in a fourteen day (biweekly) pay period.
 
 
 5
 MDOC has not paid overtime to the supervisors for hours they worked in excess of 86 hours in a biweekly pay period, nor has it paid overtime compensation to civilians for hours they worked in excess of forty hours per work week. Instead, plaintiffs have received compensatory time off on an hour-for-hour basis, one hour of compensatory time for one hour of overtime, for the extra hours that they have worked. J.A. 191-99.
 
 
 6
 Plaintiffs are subjected to rigid attendance and timekeeping requirements by MDOC. They are required to keep set working hours, and are required to record the actual hours they work by either punching a time clock, submitting a written time sheet, or both.
 
 
 7
 Plaintiffs assert that MDOC subjects their pay to reductions for absences from work of less than a full day's, i.e., eight hours, duration if the absences cannot be "covered" as vacation, sick leave, personal leave, or accrued compensatory time. For this assertion, plaintiffs rely on the provision of the State of Michigan's Compensation Plan, Sec. 11 - Sick Leave Standard, II.d, which states:
 
 
 8
 Sick leave shall not be credited or used in anticipation of future leave credits. In the absence of applicable leave credits, compensation reduction for the time lost shall be made for the work period in which the absence occurred. The employee may elect not to use annual leave to cover such absence.
 
 
 9
 J.A. 274-75. In response, defendants have submitted the affidavit of Jan Miller, the Director of Labor Relations for MDOC. Miller's affidavit states in relevant part that
 
 
 10
 [t]he duties of each of the Plaintiffs listed in Class I and Class II of Plaintiffs' lawsuit fall within the definition of a bona fide executive, administrative, or professional capacity and hence these employees have been considered to be exempt from the overtime requirements of its Fair Labor Standards Act pursuant to 29 U.S.C. Sec. 213(a)(1).
 
 
 11
 * * *
 
 
 12
 This section [Michigan's Compensation Plan, Sec. 11 - Sick Leave Standard, II, d] contemplates absences of 8 hours or more. It is generally applied in situations for employees granted a medical leave of absence prior to application and approval of such a leave of absence.
 
 
 13
 7. Employees ineligible for overtime, who have absences of less than 8 hours duration, in the absence of available leave credits or compensatory time, do not incur a reduction in pay. If such a reduction occurred it would be in error or inadvertent. The Michigan Department of Corrections Policy Directive PD-DWA-01.02 ... states the following in the timekeeping section:
 
 
 14
 "Employees shall not take time off without the use of leave credits unless on an approved leave of absence ..."
 
 
 15
 The subsection on late arrivals only provides for lost time (reduction in pay) for employees eligible for cash payment of overtime.
 
 
 16
 8. It is the clear intent of the MDOC that no pay reduction occur for less than 8 hours. There is no provision in this policy allowing deductions for absences of less than one day for employees ineligible for overtime in the absence of available leave credits or compensatory time.
 
 
 17
 * * *
 
 
 18
 While Plaintiffs are expected to adhere to certain shift arrivals and departures, and are required to punch a time clock or otherwise maintain timesheets, this policy has been implemented by the MDOC in part for accountability to the taxpayers of this state, as a mechanized means of collecting time records, and for security purposes, for protection of the employees in the event of a prison uprising or other emergency situation, and to determine who is actually present at the facility. The policy is not intended as a punitive measure.
 
 
 19
 J.A. 274-77.
 
 
 20
 Finally, in a letter dated June 26, 1991, plaintiffs were notified that due to budgetary restrictions, a revenue shortfall, classified state employees would be subject to temporary layoff, a furlough, on four specific days, consecutive or non-consecutive, in August of 1991. The record indicates that the furloughs of plaintiffs in this action occurred during the biweekly pay periods ending on August 17, 1991 and August 31, 1991. J.A. 576.
 
 B.
 
 21
 This appeal involves a class action brought pursuant to section 16 of the FLSA, 29 U.S.C. Sec. 216. There are two classes of plaintiffs in this action: (1) the supervisor class, which consists of class representative William T. Gannon and similarly situated supervisors of security personnel in correctional institutions run by MDOC; and (2) the civilian class, which consists of class representative Travis U. Jones and similarly situated civilian employees of the MDOC.
 
 
 22
 Plaintiffs filed their complaint in this action on July 9, 1991, and they filed their first amended complaint on July 16, 1991. Plaintiffs filed their second amended complaint on January 8, 1993.
 
 
 23
 The second amended complaint contains five counts. Count I alleges that the MDOC violated the FLSA by failing to pay overtime compensation to the members of the supervisor class. Count II alleges that MDOC violated the FLSA by failing to pay overtime compensation to the members of the civilian class. Count III alleges that MDOC breached its contract of employment with all the plaintiffs by failing to comply with the requirements set forth in the Michigan Civil Service Compensation Plan. Count IV alleges that MDOC and MDCS violated the rights of the supervisor class, established by Civil Service procedures and civil service grievance awards, by failing to pay them overtime compensation for the time they spent attending mandatory daily line-up meetings prior to the start of their shifts. Count V alleges that the MDOC violated the FLSA by failing to pay the plaintiffs their full salary for certain workweeks in which they worked a part of the week and were furloughed by MDOC for the remainder of the week due to budgetary constraints.
 
 
 24
 First, with regard to the claims of the supervisory class plaintiffs for the violation of their rights under the grievance awards in count IV, the district court in an opinion and order issued on June 3, 1992, granted defendants' motion to dismiss Count IV of plaintiff's first amended complaint under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) for failure to state a claim upon which relief can be granted. The district court found that Count IV failed to state a claim upon which relief can be granted "[b]ecause [it] allege[d] violations of grievance awards prior to plaintiffs exhausting the appropriate administrative remedies, while failing to allege that exhausting those remedies would constitute a useless effort." J.A. 92. Further, in an opinion and order dated November 12, 1992, the district court denied plaintiffs' motion to reconsider the dismissal of Count IV of their amended complaint, and the court also denied plaintiffs' motion for leave to file a third amended complaint in which they proposed to "add to Count IV an allegation that exhaustion of administrative remedies would be useless." J.A. 322.
 
 
 25
 Second, with regard to plaintiff's claims for overtime compensation in Counts I and II, the district court granted defendants' motion for summary judgment on those claims in an opinion dated March 4, 1993. Specifically, the district court found that "plaintiffs in this case are 'salaried' as defined under 29 C.F.R. Sec. 541.118(a). Thus, they are exempt under the FLSA. Defendants' motion for summary judgment as to counts I & II is granted." J.A. 424.
 
 
 26
 Third, with regard to the claims in count V, the district court granted plaintiffs' motion for summary judgment in an opinion dated March 4, 1993. Specifically, the court concluded that because it had found that plaintiffs were salaried employees when dismissing their claims for overtime in counts I and II, under 29 C.F.R. Sec. 541.118(a), they were entitled to their full salaries for the workweeks in which they had been furloughed because they had performed some work during those weeks and had been ready, willing, and able to work during the furloughs, which had been imposed for budgetary reasons. However, although the district court granted summary judgment in favor of plaintiffs, it noted that "the issue of damages as to count V still remains." J.A. 416. Thus, the district court directed the parties to submit stipulations and/or further briefs on the issue of damages.
 
 
 27
 Finally, in its opinion of March 4, 1993, the district court dismissed the pendent state law claim in count III, the claim for breach of contract, without prejudice. The district court stated that
 
 
 28
 because this Court has dismissed counts I, II, IV & V of plaintiffs' second amended complaint, only count III remains. Because count III is purely a state claim, breach of contract, this Court will dismiss this claim without prejudice.
 
 
 29
 J.A. 416. Thereafter, on March 18, 1993, defendants filed a motion to alter or amend the district court's grant of summary judgment in favor of plaintiffs as to count V of the second amended complaint, which was denied by the district court in an opinion and order dated July 22, 1993.
 
 
 30
 Subsequently, on May 5, 1993, defendants filed a motion to strike those plaintiffs from the class action who had filed consents to join the action after March 4, 1993. The district court denied defendants' motion on July 22, 1993, stating:
 
 
 31
 [T]his Court will deny defendants' motion. However, no more plaintiffs will be allowed to join the class after this Court signs its opinions on the issue of damages and the motion to alter or amend. After these two issues are resolved, then the [Roberts v.] Western Airlines[, 425 F. Supp. 416 (N.D. Cal. 1976)] rule will clearly be applicable to this case.
 
 
 32
 J.A. 486 (emphasis in original). That same day, July 22, 1993, the district court issued an opinion on the issue of plaintiffs' damages under Count V. The district court found (1) that plaintiffs were not entitled to liquidated damages or attorney fees because they had not established that defendants violated either sections 206 or 207 of the FLSA, and (2) that plaintiffs were entitled to prejudgment interest as part of their total damage award.
 
 
 33
 Thereafter, on July 29, 1993, plaintiffs filed a request to add another member, Ann Marie Carlin, to the action as part of the civilian class. J.A. 489. On August 23, 1993, the district court issued an order stating "that no plaintiffs will be allowed to join the class after July 23, 1993, the date this Court filed its opinions on the issue of damages and the motion to alter or amend." J.A. 70.
 
 
 34
 On December 20, 1993, the district court issued an order granting defendants' request that the members of the class who were entitled to recover reimbursement of the unpaid salary resulting from the furlough under Count V "be limited to those members of plaintiffs' class who were paid on a salary basis, were not ranked below captain, and were forced to take unpaid furlough days." J.A. 72. In addition, the district court ordered the parties to file a stipulation concerning the total damages to be paid to plaintiffs "on or before January 7, 1992." J.A. 73. In an accompanying opinion, the district court stated:
 
 
 35
 Plaintiffs have pounced upon some language in this Court's Order issued March 3, 1993 to assert that this Court found that all plaintiffs are entitled to the furlough day reimbursement. Plaintiffs' interpretation of that Opinion and Order is incorrect. In that Order, this Court ruled that "judgment is GRANTED in favor of all plaintiffs and against all defendants as to count V of plaintiffs' second amended complaint."
 
 
 36
 A review of the issue being resolved by that order reveals that the Court was not faced with the question of whether sergeants and lieutenants were "salaried employees" under FLSA. Rather, the issue was whether or not, as a matter of law, salaried employees who worked during part of a week were entitled to their full salary for that week even though the state mandated that some furlough days be taken during that week ....
 
 
 37
 As to the issue of whether sergeants and lieutenants are "salaried employees" under FLSA, defendants' contention that the parties have treated these employees as unsalaried since the March 4th Order is persuasive.
 
 
 38
 * * *
 
 
 39
 Count V, which sought relief due to the furlough days, was added in the event the Court found that plaintiffs were paid on a "salary basis" under FLSA, rather than as hourly employees entitled to FLSA's overtime protections. The second amended complaint that added Count V followed on the heals (sic) of a Michigan Civil Service Commission Employment Relations Board ruling in favor of all non-salaried members of plaintiff classes below the rank of captain, awarding them premium overtime compensation for the pre-shift lineups.
 
 
 40
 This Court, in its Opinion in March, considered those employees similarly situated to named plaintiffs, Travis Jones and William Gannon, who were treated by the State as exempt from the FLSA overtime provisions due to being paid on a salary basis, and found that because their compensation had never in fact been reduced for a partial day's absence, they were "salaried." As a result, though these employees were ineligible for the overtime payments, they were, as a result, eligible for reimbursement of the reduction in salary caused by furlough days. Plaintiff Jones was a deputy warden of a state prison, and plaintiff Gannon was ranked as a captain at the correctional facility.
 
 
 41
 This Court did not, as contended by plaintiffs, determine that plaintiffs ranked below captain, who were ruled eligible for overtime, were similarly situated to the named plaintiffs and entitled also to reimbursement of lost pay due to the furlough days. There has been no finding that the lower ranked plaintiffs, unlike those similarly situated to plaintiffs Jones and Gannon, were not subject to actually having their pay reduced for a partial day's absence.
 
 
 42
 Finally, plaintiffs have maintained from the outset that none of their members, including sergeants and lieutenants were "salaried" as defined in FLSA.
 
 
 43
 J.A. 571-74. Further, in its opinion of December 20, 1993, the district court found that under 28 U.S.C. Sec. 1961, the rate for prejudgment interest was 5.68 percent. J.A. 577.
 
 
 44
 Thereafter, on January 13, 1994, the parties entered into a stipulation which stated in relevant part that:
 
 
 45
 1. The total pay lost by the Plaintiffs who were paid on a salaried basis, were not ranked below captain, and were forced to take unpaid furlough days ... is $68,933.92.
 
 
 46
 2. The prejudgment interest due to the Plaintiffs described in paragraph 1 above is $9,593.99.
 
 
 47
 3. The total damages due to the Plaintiffs described in paragraph 1 above, including prejudgment interest, is $78,527.91.
 
 
 48
 J.A. 578-79. Finally, on January 21, 1994, the district court entered a judgment consistent with the stipulation of the parties. J.A. 75. A timely appeal by plaintiffs and a timely cross-appeal by defendants followed.
 
 II.
 A.
 
 49
 Plaintiffs argue that the district court erred by granting summary judgment in favor of defendants on their claims for overtime compensation in Counts I and II. Specifically, plaintiffs assert that the district court erred in concluding that they were paid on a "salary basis" because they were subject to rigid timekeeping requirements, their pay was subject to deductions for absences of less than a day, and their pay was reduced during a mandatory budget-related furlough.
 
 
 50
 We review a district court's grant of summary judgment de novo. City of Mount Clemens v. United States EPA, 917 F.2d 908, 914 (6th Cir. 1990) (citing Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988)). Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provides that summary judgment is proper only
 
 
 51
 if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 52
 Fed. R. Civ. P. 56(c).
 
 
 53
 "As we consider the appropriateness of summary judgment in the case at bar, we must examine the record, taken as a whole, to determine whether the nonmoving party has raised a genuine issue of material fact." Mt. Clemens, 917 F.2d at 913-14 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). In making this assessment, we "must view all facts and the inferences drawn therefrom in the light most favorable to the nonmoving party." United States v. Murphy, 937 F.2d 1032, 1036 (6th Cir. 1991) (citing 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987)). Furthermore, "the substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 54
 In Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 556 (1985), the Supreme Court expressly overruled its prior ruling in National League of Cities v. Usery, 426 U.S. 833 (1976), and held that extension of FLSA coverage to employees of state and local governments was not unconstitutional. Following the Supreme Court's decision in Garcia, Congress passed legislation delaying the application of FLSA's "overtime provisions to states and localities until April 16, 1986." Harris v. District of Columbia, 709 F. Supp. 238, 239 (D.D.C. 1989) (citing Fair Labor Standards Amendments of 1985, Pub. L. No. 99-150, 99 Stat. 787, 788-89).
 
 
 55
 "Under the FLSA, all employees must ordinarily be paid one and one-half times their normal hourly wage for all hours exceeding forty hours worked in one week." Barner v. City of Novato, 17 F.3d 1256, 1259 (9th Cir. 1994) (citing 29 U.S.C. Sec. 207(a)(1)). "FLSA provides limited exemptions from its overtime rule, however .... the exemption at issue here is that for any worker 'employed in a bona fide executive, administrative or professional capacity."' Id. (quoting 29 U.S.C. Sec. 213(a)(1)).
 
 
 56
 "Congress did not define 'bona fide executive' in the FLSA, choosing instead to delegate that responsibility to the Secretary of Labor." Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections, 992 F.2d 82, 83 (6th Cir. 1993) (per curiam) (citing 29 U.S.C. Sec. 213(a)(1)). "The regulations define 'bona fide executive' as an employee with supervisory duties who is paid on a salaried basis." Id. (citing 29 C.F.R. Sec. 541.1(f); 29 C.F.R. Sec. 541.117(a)). An employee must have both supervisory duties and be paid on a salaried basis in order to fall within the "bona fide executive" exemption. See Abshire v. County of Kern, 908 F.2d 483, 484 (9th Cir. 1990), cert.denied, 498 U.S. 1068 (1991).
 
 
 57
 In this case, the parties do not dispute that plaintiffs satisfy the supervisory requirement. Thus, this case concerns only whether plaintiffs are paid on a "salary basis." The regulations give the following definition of a salary basis:
 
 
 58
 An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.
 
 
 59
 29 C.F.R. Sec. 541.118(a).
 
 
 60
 "Under the exceptions in Sec. 541.118(a), deductions made when an employee is absent for a day or more for personal reasons or for sickness or disability if the employer has a disability plan do not affect the salaried status of an employee." Knecht v. City of Redwood City, 683 F. Supp. 1307, 1311 (N.D. Cal. 1987) (citing 29 C.F.R. Sec. 541.118(a)(2) and (3)). "However, deductions for absences shorter than a full day fall under neither exception in subsections (2) and (3)." Id. "'A salaried professional employee may not be docked pay for fractions of a day of work missed."' Knecht, 683 F. Supp. at 1311 (quoting Donovan v. Carls Drug Co., Inc., 703 F.2d 650, 652 (2d Cir. 1983)).
 
 
 61
 "[B]ecause the FLSA is a remedial act, its exemptions, such as the 'bona fide executive' exemption claimed in this case, are to be narrowly construed." Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)), cert. denied, 113 S. Ct. 298 (1992). "[A]n employer bears the burden of proving that its employees fall within an exempted category of the [FLSA]." Martin, 949 F.2d at 614 (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974)). The executive exemption is to be applied only to those employees clearly and unmistakably within the terms and spirit of the exemption. Arnold, 361 U.S. at 392. "'Breadth of coverage' is 'vital to [the FLSA's] mission."' Thomas v. County of Fairfax, 758 F. Supp. 353, 358 (E. D. Va. 1991) (quoting Powell v. United States Cartridge Co., 339 U.S. 497, 516 (1950)). See also Schultz v. W. R. Hartin & Son, Inc., 428 F.2d 186, 189 (4th Cir. 1970) (FLSA creates a "presumption of coverage"). Finally, because the district court's evaluation of the issue of possible reductions in pay "is an issue of regulatory construction, we review the district court's conclusion de novo." Barner, 17 F.3d at 1261 (citing United States v. Martinez, 7 F.3d 146, 147 (9th Cir. 1993)).
 
 
 62
 In its opinion of March 4, 1993, the district court found
 
 
 63
 that plaintiffs still have not shown ... that "their compensation has never in fact been reduced for a partial day's absence. Their concern is merely a theoretical argument based upon the ambiguous state policy manual that they would have been subject to pay reductions for absences of less than 8 hours if they had used up their annual leave." Accordingly, I find that plaintiffs in this case are "salaried" as defined under 29 C.F.R. Sec. 541.118(a).
 
 
 64
 J.A. 424 (citations omitted) (footnote omitted).
 
 
 65
 Plaintiffs argue, however, "that on the record before this court the only logical conclusion is that [plaintiffs'] pay is subject to deductions for absences of less than a day." Brief of Plaintiffs at 12. According to plaintiffs, they "believed and understood that their pay was subject to deductions for absences of less than a full day if they did not have sufficient leave to cover the time missed." Id. at 13.
 
 
 66
 In Abshire, which is relied on by plaintiffs, the Ninth Circuit held that the Abshire plaintiffs were not "salaried" employees, even though no deductions had ever actually been made from their pay for absences of less than one day's duration. Abshire, 908 F.2d at 487. However, Abshire is distinguishable from this case. In Abshire, the parties stipulated that the pay of the plaintiffs was "subject to a potential deduction for absences from work of less than a day's duration if the absence [could] not be 'covered' or paid as vacation, sick leave, or accrued compensatory time off." Id. at 485. No such stipulation is present in this case. Indeed, defendants argue that plaintiffs' pay is not subject to any potential deduction for absence of less than one day's work. Further, Jan Miller's affidavit denies that any such deductions have ever been made and states that, in the event such a deduction was made, it was either an error or inadvertent.
 
 
 67
 Moreover, Martin v. Malcolm Pirnie, Inc., 949 F.2d 611 (2d Cir. 1991), cert. denied, 113 S. Ct. 298 (1992), relied on by plaintiffs, is also distinguishable. In Martin, the defendant had actually made deductions totalling $3,269.78 from plaintiffs' pay for "fractions of days that these employees missed and did not make up or charge to accrued leave time." Id. at 613. Accordingly, the Second Circuit concluded that the plaintiffs in Martin were not paid on a salary basis and that overtime payments were due and owing to them. However, in this case there is absolutely no evidence that defendants made any deductions from plaintiffs' pay for fractions of days missed.[1]
 
 
 68
 In Michigan Ass'n of Governmental Employees v. Michigan Department of Corrections, 992 F.2d 82 (6th Cir. 1993) (per curiam), a case virtually on point with this case, the plaintiffs, relying on the same sick leave provision as plaintiffs in this case, namely, State of Michigan's Compensation Plan, Sec. 11 -Sick Leave Standard, II.d, argued that they were entitled to overtime compensation because they were not paid on a salary basis. In this case, the MDOC submitted an affidavit from Jan Miller that was similar to the affidavit submitted by Miller in this case. Id. at 85.
 
 
 69
 In reaching our conclusion that the plaintiffs in Michigan Ass'n of Governmental Employees, were paid on a salary basis, we distinguished our holding from the holding of the Ninth Circuit in Abshire. We stated that
 
 
 70
 [w]e choose to focus on the actual policy, rather than whether the policy has ever been administered, for two reasons. First, this approach is more consistent with the regulatory language defining a salaried employee ... [and] [s]econd, focusing on the actual policy is more practical and realistic.
 
 
 71
 Michigan Ass'n of Governmental Employees, 992 F.2d at 86. Nevertheless, we concluded that two factors distinguished the situation in Michigan Ass'n of Governmental Employees from the situation in Abshire: "1) the policy language in Abshire was unambiguous and 2) Kern County conceded that the policy subjected the plaintiffs to pay reductions." Id. However, we stated in Michigan Ass'n of Governmental Employees that
 
 
 72
 [t]he compensation manual does not state specifically that the plaintiffs will receive a pay reduction for absences of less than one day. Instead, the manual merely states that when "sick leave" is exhausted, "compensation reduction for the time lost shall be made for the work period in which the absence occurred." This language is far from dispositive, and the defendant's claim that it has always interpreted this language to apply only to absences of eight hours or more is certainly credible.
 
 Id. Accordingly, we stated that
 
 73
 [w]e disagree with the Abshire court's determination that actual implementation of the pay deduction policy is an irrelevant consideration. Actual application of the policy may well have been less relevant under the specific facts of Abshire, but in this case, where the policy language is ambiguous and the proper interpretation is disputed, application of the policy is highly relevant. The execution of the policy may shed more light on the actual policy than an ambiguous excerpt from an employee manual. In this case, the fact that no plaintiff's pay has ever been reduced for absences of less than one day supports the defendant's interpretation of its own sick leave policy.
 
 
 74
 Michigan Ass'n of Governmental Employees, 992 F.2d at 86.
 
 
 75
 We conclude that since we are interpreting the same ambiguous sick leave policy in this case as in Michigan Ass'n of Governmental Employees, this case, like Michigan Ass'n of Governmental Employees, is distinguishable from Abshire.[2] Plaintiffs herein have failed to present evidence that defendants' interpretation of the ambiguous sick leave policy is disingenuous or that defendants' have taken actions inconsistent with their assertion that they consider the policy language in the sick leave policy to apply only to absences of eight hours or more.
 
 
 76
 Furthermore, although plaintiffs argue that this case is distinguishable from the situation in Michigan Ass'n of Governmental Employees, we find their arguments unpersuasive. First, plaintiffs argue that the fact that they were subject to furloughs for four working days in August 1991 shows that they were not salaried. However, plaintiffs were furloughed for full working days, not less than a full day. Thus, the furloughs are irrelevant to the issue of whether they are salaried. Second, plaintiffs argue that the fact that they are subject to rigid attendance and timekeeping requirements is inconsistent with their being paid on a salaried basis. However, defendants, through Jan Miller, have responded that the reason for the rigid attendance and timekeeping requirements are not punitive, but (1) to permit MDOC as a public agency of the State of Michigan to account to the taxpayers of the state, and (2) to protect MDOC employees by giving MDOC a means to determine who is actually present in a facility in the event of a prison uprising or other emergency.
 
 
 77
 Therefore, we conclude, as we did in Michign Ass'n of Governmental Employees, that the ambiguous sick leave policy in this case is insufficient to alter plaintiffs' status as salaried employees exempt from the overtime requirements of the FLSA. Thus, the district court properly granted summary judgment in favor of defendants on plaintiffs' claims in Counts I and II of their second amended complaint because defendants have satisfied their burden of showing that plaintiffs fall within the bona fide executive exemption to the FLSA.
 
 B.
 
 78
 Plaintiffs argue that the district court erred in ordering that no additional plaintiffs would be permitted to join this class action after July 23, 1993, the date it issued its order regarding liquidated damages and prejudgment interest and its order denying defendants' motion to alter or amend its judgment in favor of plaintiffs on Count V of the second amended complaint. Plaintiffs assert that the district court should not have excluded additional plaintiffs from opting into this action, because "the Court did not rule with respect to the primary damage issue in the case -- the amount of damages the Plaintiffs were entitled to recover for the furlough claim." Brief of Plaintiffs at 17-18. The plaintiffs also assert that as of July 29, 1993, the date the district court denied Ann Marie Carlin's request to opt into the litigation as a plaintiff, the district court had ruled unfavorably on four of plaintiff's five claims, had denied liquidated damages, and had awarded prejudgment interest (but had not determined the rate of prejudgment interest). Thus, plaintiffs argue that plaintiff Carlin was not seeking to opt into an "advantageous judgment." Id. at 18.
 
 
 79
 On the other hand, defendants assert that none of the plaintiffs have standing to raise this issue as they are unaffected by the district court's decision. According to defendants, the real parties in interest, those persons excluded by the district court's order are not before the court. We agree. Section 16(b) of the FLSA, 29 U.S.C. Sec.216(b), provides that an action for damages under the FLSA may be brought
 
 
 80
 by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.
 
 
 81
 "Unlike Fed. R. Civ. P. 23, under which a class member must 'opt out' not to be bound, a 'class' member under Sec. 16(b) must 'opt in' to be bound." United States v. Cook, 795 F.2d 987, 990 (Fed. Cir. 1986). Thus, Ms. Carlin is not a 'class' member to this action and is not bound by it.
 
 
 82
 Further, even assuming arguendo that plaintiffs Gannon and Jones as the class representatives had standing to raise the issue of Ms. Carlin's exclusion, we would conclude that the district court did not abuse its discretion in excluding additional plaintiffs from opting into the action after July 23, 1993. In Roberts v. Western Airlines, 425 F. Supp. 416 (N.D. Cal. 1976), the district court declined to allow additional employees to opt into the action under Sec. 216(b). The district court stated:
 
 
 83
 While Sec. 216(b) does not specify when an employee must become a party, individuals should not be allowed to do so after judgment has been entered. Such a practice would allow employees to be bound when a judgment is advantageous and to be free when it is unfavorable.
 
 
 84
 Id. at 419. By the time Ms. Carlin sought to "opt in" as a plaintiff, the district court had resolved all of the issues in the case, except the amount of damages and prejudgment interest plaintiffs were entitled to as a result of their furlough for four working days in August 1991. Thus, by July 23, 1993, the time the district court stated it would no longer allow additional employees to "opt in," the employees could be assured of an advantageous decision, even though they would not know the exact amount of damages they might receive. The district court correctly concluded that to allow MDOC employees to "opt in" at that point in time would allow them to take advantage of a favorable decision, when they previously would have avoided a possibly unfavorable decision by not being a party to this action.
 
 C.
 
 85
 Plaintiffs also argue that the district court erred by denying their request for liquidated damages, costs, and attorney's fees. Plaintiffs assert that they are entitled to liquidated damages, costs, and attorney's fees because defendants violated Sec. 207 of the FLSA, 29 U.S.C. Sec. 207, by failing to pay them overtime compensation.
 
 
 86
 The applicable statute, 29 U.S.C. Sec. 216(b), states in relevant part:
 
 
 87
 Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of the unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. ... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. ...
 
 
 88
 Based upon the plain language of the statute, in order to be entitled to liquidated damages, attorney's fees, and costs, the employer must have been found to have violated Sec. 206 or Sec. 207 of the FLSA. Section 206 of the FLSA, 29 U.S.C. Sec. 206, governs the applicability of the minimum wage requirements of the FLSA, a provision which is not at issue in this case. Section 207 of the FLSA, 29 U.S.C. Sec. 207, governs the payment of overtime. However, having concluded that the district court properly granted summary judgment in favor of defendants on plaintiffs' claims for unpaid overtime, there has been no violation of Sec. 207 in this case. Thus, the district court did not err in denying liquidated damages, costs, or attorney's fees in this case.
 
 D.
 
 89
 Plaintiffs argue that the district court erred in dismissing their pendent state law claim for breach of the state's compensation plan, Count III, because their complaint presented substantial federal questions. Plaintiffs also assert that the district court erred in dismissing their pendent state law claim because their claim for overtime compensation was not meritless.
 
 
 90
 In dismissing the claim in Count III of plaintiffs' second amended complaint, the district court stated that "because this court has dismissed counts I, II, IV & V of plaintiffs' second amended complaint, only count III remains. Because count III is purely a state claim, breach of contract, this Court will dismiss this claim without prejudice." J.A. 416. However, the district court's statement that it had dismissed Count V of plaintiffs' second amended complaint is incorrect. Not only had the district court not dismissed Count V, it granted summary judgment for plaintiffs on Count V, a federal claim, and ultimately issued a judgment on Count V that awarded $78,527.91in damages and interest to plaintiffs.
 
 
 91
 A district court's decision to dismiss a pendent claim is reviewed for an abuse of discretion. Faucher v. Rodziewicz, 891 F.2d 864, 872 (11th Cir. 1990). "A District Court may exercise pendant jurisdiction over a state law claim if the court already has jurisdiction over a 'substantial' federal claim, if the state and federal claims are derived from a 'common nucleus of operative fact,' and if the claims are such that a plaintiff 'would ordinarily be expected to try them all in one judicial proceeding."' Union City Barge Line, Inc. v. Union Carbide Corp., 823 F.2d 129, 141-42 (5th Cir. 1987)(quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). "Generally, 'if the federal claims are dismissed before trial ... the state claims should be dismissed as well."' Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992) (citing Gibbs, 383 U.S. at 726). "However, there is no mandatory rule." Taylor, 973 F.2d at 1287. "Gibbs 'simply recognizes that' when 'all federal claims are eliminated before trial, the balance of factors ... under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims."' Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 342, 350 n. 7 (1988)). "'A trial court must balance the interests ... when deciding whether to resolve a pendent state claim on the merits."' Id. (quoting Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir. 1991)).
 
 
 92
 In this case, we believe that the district court abused its discretion when it dismissed plaintiffs' pendent state law claim on the grounds that it had already dismissed all of the other counts in plaintiffs' second amended complaint. In fact, the district court had found in favor of plaintiffs on one of their federal claims. Undoubtedly, since the district court had either dismissed or disposed of all of plaintiffs' federal claims prior to trial, it is conceivable that the district court could have chosen to balance the interests in this case and concluded that it should not exercise pendent jurisdiction. The district court did not do so, however, and the only ground it articulated for declining to exercise pendent jurisdiction does not support its dismissal of Count III. Accordingly, we conclude that the district court's dismissal of Count III shall be reversed and the case remanded for further consideration by the district court.[3]
 
 E.
 
 93
 Plaintiffs argue that the district court erred in dismissing their claims concerning the violation of their rights under the grievance awards, Count IV, for failure to exhaust administrative remedies. Plaintiffs admit that they "had not exhausted all their administrative remedies with respect to the grievance awards at the time they commenced this action," and they admit that "the Second Amended Complaint does not expressly allege that it would have been useless to exhaust all administrative remedies," Brief of Plaintiffs at 22. Plaintiffs argue, however, that the district court should not have dismissed their claims in Count IV for failure to state a claim upon which relief could be granted "because the factual allegations of the Second Amended Complaint indicated that it would have been useless for the Plaintiffs to pursue further administrative remedies." Id.
 
 
 94
 In its opinion of November 12, 1992, which denied plaintiffs' motion for reconsideration of its order dismissing Count IV and denied plaintiffs' motion to file a third amended complaint adding an allegation that exhaustion of administrative remedies would be useless, the district court stated:
 
 
 95
 Although the standard for amending pleadings is liberal, in this case amendment is not warranted. I will deny plaintiffs' motion for reasons of futility because I still do not believe that plaintiffs can meet the exception to the requirement of exhaustion of administrative remedies, which is to show that such a pursuit would be useless. Welfare Employees Union v. Civil Service Commission, 28 Mich. App. 343 (1970).
 
 
 96
 ....
 
 
 97
 The Civil Service Commission, Employees Relations Board (ERB) is presently considering whether the State Personnel Director has the legal authority to make "exceptions" to the Civil Service Compensation Plan in the case Patrick Clark and Department of Corrections, (HO-072-91). If this tribunal answers "no", plaintiffs' contentions under Count IV are likely to become moot.
 
 
 98
 J.A. 323-24. The district court also stated that "it may be appropriate to revisit this question after the Patrick Clarke (sic) case is resolved." J.A. 325.
 
 
 99
 Subsequently, on January 6, 1993, the ERB issued its decision in the Patrick Clark case. In the Patrick Clark case, the ERB found in favor of the plaintiffs. Specifically, the ERB found "no provision in the Rules or the compensation procedures for granting an 'exception' in order to deprive eligible employees of the overtime compensation to which they are entitled without due process," and the ERB "affirm[ed] the HO's [Hearing Officer's] conclusion that Clark, et al. are entitled to overtime pay for preshift line-up meetings." J.A. 530-31. Finally, the ERB found "that this matter was properly before the HO as a grievance appeal for the reasons stated above. Further, the Board concurs with the HO's decision to grant the grievance with retroactive relief, as specified by stipulation of the parties. ..." J.A. 534.
 
 
 100
 Thus, in light of plaintiffs' ability to obtain relief from the ERB, we conclude that the district court did not err in dismissing plaintiffs' claims in Count IV for failure to exhaust administrative remedies. Clearly, it was not a futile or unnecessary act to require plaintiffs to exhaust their administrative remedies.[4]
 
 F.
 
 101
 Plaintiffs argue that the district court erred in finding that some of the plaintiffs were not paid "on a salary basis" and thus were not entitled to recover on their claim for lost wages due to a furlough. Plaintiffs assert that the district court erred because it had previously held that all plaintiffs were paid on a salary basis. According to plaintiffs, pursuant to Coal Resources, Inc. v. Gulf & Western Indus., Inc., 865 F.2d 761, 766 (6th Cir.) (per curiam), amended, 877 F.2d 5 (6th Cir. 1989), the district court's ruling became the law of the case and could not be relitigated in the district court.
 
 
 102
 Defendants argue that the district court did not err because the supervisor class, represented by plaintiff William T. Gannon, a captain at an MDOC correctional facility, actually consists of two classes of individuals, supervisory personnel holding the rank of captain or higher, who were treated by the State as bona fide executives exempt from the overtime requirements of the FLSA, and lieutenants and sergeants, "who were not treated by the State as exempt from the FLSA overtime requirements; who were eligible for overtime and who ... Plaintiffs admitted were not bona fide executives, administrators or professionals." Brief of Defendants at 26.
 
 
 103
 As proof that plaintiffs have admitted that lieutenants and sergeants were not bona fide executives, defendants point to a stipulation that was attached to plaintiffs' brief concerning damages in the district court; that stipulation read in relevant part:
 
 
 104
 3. The Defendant Michigan Department of Corrections will provide this information for all named Plaintiffs, however, the parties agree that those Plaintiffs holding the rank of Sergeant or Lieutenant at the time of the Furlough are not "salaried" employees as that term is defined in the Fair Labor Standards Act, 29 U.S.C. Sec. 201 et seq., and its implementing regulations.
 
 
 105
 J.A. 465. However, this stipulation is unsigned. Nevertheless, on March 16, 1993, the parties entered into a stipulation concerning damages that states in relevant part:
 
 
 106
 1. The Defendant Michigan Department of Corrections will provide the following information for each of the Plaintiffs in this action except those Plaintiffs who are eligible for overtime under the Michigan Civil Services Compensation Plan ....
 
 
 107
 J.A. 469-70 (emphasis added). Prior to the time that the parties entered into their stipulation, the ERB issued its decision in Patrick Clark. In its decision, the ERB states that "[a]ccording to the [Michigan Civil Services] Compensation Plan, the Sergeants (CSS IV) and Lieutenants (CSS V) are eligible for overtime; the Captains CSS VI are ineligible." J.A. 525. Further, defendants also submitted to the district court the affidavit of Dinah Moore, the assistant manager of Labor Relations for MDOC. Her affidavit states in relevant part:
 
 
 108
 [T]he members of the class plaintiffs who are designated on the attached exhibit as "Employees Paid on a Salary Basis" are those members of this class action who are entitled to reimbursement for the furlough days under this Court's March 4, 1993 Opinion and Order because they are similarly situated to Plaintiffs Jones and Gannon. Plaintiff Jones was at all times pertinent to this lawsuit, a Deputy Warden at the State Prison of Southern Michigan. In addition, Plaintiff Jones was not eligible for overtime compensation and was paid on a salary basis.
 
 
 109
 Plaintiff Gannon at all relevant times was a Captain at a correctional facility. Plaintiff Gannon is not eligible for overtime compensation and is paid on a salary basis. Members of the plaintiff classes who are similarly situated to Plaintiffs Gannon and Jones are those employees holding the rank of Captain and above, who are not entitled to overtime compensation for hours worked in excess of forty (40) hours in a work week, and who are paid on a salary basis.
 
 
 110
 7. That the employees listed in the category of "Employees Not Paid on Salary Basis" are not entitled to reimbursement for the furlough days under this Court's March 4, 1993 Opinion and Order since they are not similarly situated to the named plaintiffs, Jones and Gannon. These class members are eligible for overtime compensation for hours worked in excess of forty (40) in a work week, and are not paid on a salary basis. These employees held a rank below that of Captain at all times relevant herein.
 
 
 111
 J.A. 541-42.
 
 
 112
 In this case, we conclude that the district court did not err or violate the law of the case doctrine when it found that sergeants and lieutenants were not eligible for reimbursement for the furlough days because they were not paid on a salary basis. As is discussed below, the district court lacked authority to order the State to reimburse those plaintiffs, who were paid on a salary basis, for the wages lost due to the four day furloughs in August 1991. Thus, even were we to hold that the district court's decision did conclude that all plaintiffs were paid on a salary basis and that the district court's holding had become the law of the case, it would be of no avail to the plaintiffs who are sergeants and lieutenants.
 
 
 113
 Further, we agree with the district court that its opinion and order of March 4, 1993 dealt with plaintiffs who were similarly situated to plaintiffs Gannon and Jones; namely, plaintiffs who were not eligible for overtime because they were paid on a salary basis. Based upon evidence subsequently submitted to the district court, the court learned that there was a subclass of plaintiffs who were not similarly situated to plaintiffs Gannon and Jones because they were not paid on a salary basis and were eligible for overtime, and the district court properly distinguished their situation in its opinion and order of December 20, 1993[5].
 
 G.
 
 114
 On cross-appeal, defendants argue that the district court's application of the FLSA to require them to reimburse state employees for budget-related furloughs violates the Tenth Amendment to the Constitution of the United States. Specifically, defendants assert that the application of the FLSA to require them to reimburse state employees for furloughs imposed due to budgetary constraints violates state sovereignty by invading areas of traditional governmental functions. According to defendants, such an "application of the FLSA would deprive the State of its ability to regulate its relationship with its employees with respect to budget shortfalls." Brief of Defendants at 34. However, defendants state:
 
 
 115
 The State does not make a blanket attack on application of the FLSA to the State in total. It is the State's position that if application of the FLSA were to require it to reimburse salaried employees for deductions made as a result of budget-required furlough days, rather than allowing the State to lose its overtime exemption for that period, the FLSA unconstitutionally regulates the State as a State in decisions related to resolving its budgetary difficulties.
 
 
 116
 Id. at 36.
 
 
 117
 In Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985), the Supreme Court noted that in Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 287-88 & n. 29 (1981), it had summarized the prerequisites for governmental immunity. The Court stated:
 
 
 118
 Under that summary, four conditions must be satisfied before a state activity may be deemed immune from a particular federal regulation under the Commerce Clause. First, it is said that the federal statute at issue must regulate "the 'States as States."' Second, the statute must "address matters that are indisputably 'attribute[s] of state sovereignty."' Third, state compliance with the federal obligation must "directly impair [the States'] ability 'to structure integral operations in areas of traditional governmental functions."' Finally, the relation of state and federal interests must not be such that "the nature of the federal interest ... justifies state submission."
 
 
 119
 Garcia, 469 U.S. at 537. The Court then "reject[ed], as unsound in principle and unworkable in practice, a rule of state immunity from federal regulation that turns on a judicial appraisal of whether a particular governmental function is 'integral' or 'traditional."' Id. at 546-47. Rather, the Court stated that "[i]fthere are to be limits on the Federal Government's power to interfere with state functions ... we must look ... to ... the manner in which the Constitution insulates States from the reach of Congress' power under the Commerce Clause." Id. at 547.
 
 
 120
 Accordingly, the Court went on to hold that it "perceive[d] nothing in the overtime and minimum-wage requirements of the FLSA ... that is destructive of state sovereignty or violative of any constitutional provision, id. at 554, and the Court expressly overruled its holding in National League of Cities Usery, 426 U.S. 833 (1976), in which it had held that Congress lacked authority to impose the requirements of the FLSA on state and local governments.
 
 
 121
 In Brinkman v. Department of Corrections of Kansas, 21 F.3d 370 (10th Cir), cert. denied, 115 S. Ct. 315 (1994), the Kansas Department of Corrections challenged the district court's order that it pay actual and liquidated damages for unpaid overtime to various corrections officers on the ground that as an agency of the state, it was immune from suit under the Tenth Amendment. The Tenth Circuit rejected the argument of the Department of Corrections, stating:
 
 
 122
 In making its Tenth Amendment argument defendant seeks to resurrect National League of Cities v. Usery, 426 U.S. 833 (1976) which was expressly overruled by Garcia v. San Antonio Metro Transit Auth., 469 U.S. 528 (1985) ... We have expressly recognized the authority of Garcia's holding that the Tenth Amendment is not violated by extending the FLSA to the states. Renfro v. City of Emporia, 948 F.2d 1529, 1541 (10th Cir. 1991), cert. dismissed, U.S. , 112 S. Ct. 1310, 117 L.Ed.2d 510 (1992). The issue is settled; defendant's Tenth Amendment immunity argument fails.
 
 
 123
 Id. at 371 (parallel citations omitted).
 
 
 124
 Further, in Biggs v. Wilson, 1 F.3d 1537 (9th Cir. 1993), cert. denied, 114 S. Ct. 902 (1994), the State of California challenged the district court's grant of summary judgment for defendants under the FLSA. The district court found that the State had violated the minimum wage provisions of the FLSA by failing to issue paychecks to state workers promptly. The State failed to pay employees on their usual "payday" because the Legislature had failed to pass a budget, and a 1990 state law prevented the issuance of paychecks until a budget had been passed by the legislature and signed by the governor.
 
 
 125
 The Ninth Circuit rejected the State's argument that the district court's finding that the FLSA contains a requirement that employees be paid promptly at the end of a pay period infringed the State's sovereignty under the Tenth Amendment. The court stated:
 
 
 126
 Assuming state officials are correct that in the absence of a budget, the state was not legally able to pay its employees, we nevertheless find that the application of the FLSA is not preempted by the Tenth Amendment. To the extent compliance with the FLSA interferes with the state budgetary process, that interference is caused by state law, not federal law. The FLSA does not require California to pass a budget on time; it only requires California to do what all employers must do--pay its employees the minimum wage on payday.
 
 
 127
 Id. at 1543.
 
 
 128
 Likewise in this case, defendants admit that the furlough days in question were the result of appropriations reductions mandated by Michigan law, not federal law, because of a revenue shortfall. Accordingly, we reject defendants' contention that application of the FLSA to them is a violation of the Tenth Amendment.
 
 H.
 
 129
 Defendants also argue that the district court erred when it found that the FLSA required them to reimburse salaried employees for the deductions made as the result of budget-required furlough days. We agree.
 
 
 130
 "In 1938 Congress enacted the Fair Labor Standards Act requiring employers covered by the Act to pay employees minimum wages plus overtime at one and one-half times their regular rate of pay for hours worked in excess of forty per work week." Alewine v. City Council of Augusta, 699 F.2d 1060, 1065 (11th Cir. 1983) (citing 29 U.S.C. Secs. 206, 207 (1940 ed.)). In ordering defendants to reimburse plaintiffs for the deductions made as the result of budget-related furloughs, the district court relied not on the substantive provisions of the FLSA but on the Department of Labor regulation at 29 C.F.R. Sec. 541.118(a), which states:
 
 
 131
 (a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.
 
 
 132
 Further, 29 C.F.R. Sec. 541.118(a)(6) provides:
 
 
 133
 The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.
 
 
 134
 The regulations at 29 C.F.R. Sec. 541.118 are used to determine whether a person is paid "on a salary basis" for purposes of whether he falls within the bona fide executive exemption to the requirement that overtime be paid. The regulation, 29 C.F.R. Sec. 541.118(a) does not require that an employee paid on a salary basis be paid his full salary for any week in which he performs any work without regard to the number of days or hours worked. Rather, the regulation provides that to be considered paid "on a salary basis" a person must receive, subject to exceptions set out in other subsections of 29 C.F.R. Sec. 541.118, "his full salary for any week in which he performs any work without regard to the number of days or hours worked."
 
 
 135
 Indeed, defendants admit that the State of Michigan "loses its overtime exemption during the workweeks in which deductions were made to Plaintiffs' salaries as a result of the budget-required furlough days." Brief of Defendants at 42. Defendants' admission is based on their contention that the facts of this case fall within the provision of 29 C.F.R. Sec. 541.118(a)(6), which provides that when an impermissible deduction is made during a situation when there is no work available, the employer loses the bona fide executive exemption for the entire period when such deductions were made. We agree. As the district court in Harris v. District of Columbia, 709 F. Supp. 238 (D.D.C. 1989) stated:
 
 
 136
 This decision is supported by a recent letter ruling of the Department of Labor's Wage and Hour Division ... [in which] the Division effectively ruled that the frequency of ... deductions would determine the extent of the disqualification under the regulations. The Division Concluded: "Where an occasional deduction that is not permitted by section 541.118 is made from the salary of an otherwise exempt employee, the exemption would be lost in that workweek when the deduction is made. However, if such deductions are regular and recurring, we would question whether the employee is actually paid 'on a salary basis' and the exemption may be denied in all workweeks in which it is claimed, including those weeks where no deduction is claimed."
 
 
 137
 Id. at 241 (quoting U.S. Dep't of Labor, Wage and Hour Division, Letter Ruling of January 15, 1986).
 
 
 138
 In this case, the furlough deductions were not regular and recurring; in fact, they were not even occasional. Rather, the furlough deductions were an isolated occurrence, necessitated by budget problems. Thus, we conclude that defendants lost the bona fide executive exemption for those workweeks in August 1991 during which they made impermissible deductions from plaintiffs' salaries. Accordingly, since we have already concluded that the district court lacked authority to order defendants to reimburse those plaintiffs who are paid on a salary basis for the four furlough days in August 1991, we shall reverse the district court's grant of summary judgment in favor of plaintiffs under Count V of their second amended complaint and remand this issue for further proceedings consistent with this opinion.
 
 
 139
 Finally, we note that the record shows that defendants furloughed plaintiffs a total of four days each, during two pay periods, i.e., four weeks, in August 1991. Thus, defendants lost the "bona fide executive" exemption during that four-week period. On remand, the district judge is directed to determine which of the plaintiffs are entitled to overtime under the regulations for the four-week period during which defendants lost their "bona fide executive" exemption.
 
 III.
 
 140
 For the reasons stated, the district court's grant of summary judgment in favor of defendants as to Counts I and II of the second amended complaint; the district court's order that no additional class members be permitted to join the action after July 23, 1993; the district court's order denying plaintiffs' request for liquidated damages, costs and attorney's fees; the district court's order dismissing plaintiffs' state law claim for breach of the grievance awards in Count IV of the second amended complaint; and the district court's order determining that sergeants and lieutenants are not entitled to reimbursement for the budget-required furlough days are AFFIRMED. However, the district court's dismissal of plaintiff's state law claim for breach of contract in Count III, and the district court's grant of summary judgment for plaintiffs as to Count V of the second amended complaint are REVERSED, and the case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 In their "Third Brief," plaintiffs state that they "do not agree that none of them have ever been docked for less that (sic) 8 hours in a day." Third Brief of Plaintiffs at 1. However, other than this conclusory statement, plaintiffs have provided no evidence that any of them have ever had their pay docked for an absence of less than eight hours
 
 
 [2]
 Following its decision in Abshire, the Ninth Circuit decided Barner v. City of Novato, 17 F.3d 1256 (9th Cir. 1992). In Barner, the City had a policy of deducting employee absences of less than a full day from an employee's unused leave time; however, if the employee had no unused leave time the decision of what to do was left to the discretion of the City Manager. the plaintiffs in Barner sued the City under the FLSA because they were denied overtime compensation
 The court refused to extend its holding in Barner, distinguishing the situation from the situation presented in Abshire. The Ninth Circuit stated that in Abshire they were "faced with an express policy of deducting from its overtime-exempt employees' pay for absences of less than a day," but no such policy existed in Barner. Id. at 1262. Accordingly, the Ninth Circuit held that "in the absence of an express policy subjecting an executive or administrative employee's pay to reduction for absences of less than one day, deducting accrued leave time is not conduct which puts the employee outside the applicable exemption." Id. at 1258.
 The court in Barner also noted that it was reluctant to extend its decision in Abshire because the Department of Labor had issued new regulations since the Abshire decision. The new regulation, 29 C.F.R. Sec. 541.5d, states:
 (a) An employee of a public agency who otherwise meets the requirements of Sec. 541.118 shall not be disqualified from an exemption under Secs. 541.1, 541.2 or 541.3 on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced of such employee to be placed on leave without pay for absences, for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because--
 (1) permission for its use has not been sought or has been sought and denied; or
 (2) the employee chooses to use leave without pay.
 
 
 [57]
 Fed. Reg. 37,677 (August 19, 1992). The Ninth Circuit noted that the regulation was not retroactive. Barner, 17 F.3d at 1263, a holding which is in accord with our holding in Michigan Ass'n of Governmental Employees, 992 F.2d at 84 n.1. ("We hold that the 'public employee exception should not be applied retroactively.")
 
 
 [3]
 On remand, the district court should first balance the interests in this case and determine whether it will exercise pendent jurisdiction over the claim set forth in plaintiffs' Count III. Because this issue is one committed to the district court's discretion, we express no opinion on the outcome of this balancing
 
 
 [4]
 Defendants suggest that because plaintiffs have obtained all the relief they could have obtained from the district court as a result of the ERB's decision, their claims in Count IV are now moot. However, it is impossible to determine whether plaintiffs' claims are moot from the current state of the record before this court. Specifically, it is impossible to determine whether the ERB decision has resulted in plaintiffs being paid the retroactive overtime payments that the ERB found were due and owing to them
 
 
 [5]
 Further, we note that we need not revisit the district court's grant of summary judgment as to counts I and II as the claims for overtime of the Sergeants and Lieutenants are now moot. In its decision of January 6, 1993, the ERB ordered that Sergeants and Lieutenants be paid the overtime they sought